# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00686-CV

---

**Gayle Webb, Appellant**

**v.**

**Thomas G. Robins, Appellee**

---

### FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
### NO. C2006-0662C, HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is an action for libel and slander based on allegedly defamatory statements by appellee Thomas G. Robins, a member of the board of directors of a homeowners' association, concerning appellant Gayle Webb's handling of an insurance claim during his prior tenure on the board. The district court granted Robins's motion for summary judgment on all of Webb's claims. Webb appeals. We find that the summary judgment evidence was sufficient to raise material fact issues on the libel claim, but not on the slander claim. We, therefore, affirm in part and reverse and remand in part.

### Factual and Procedural Background

Appellant Webb and appellee Robins are each condominium owners at Allegro North Condominiums in Rockport, Texas, and members of Allegro North's homeowners' association, the Allegro North Condominium Council of Co-Owners, Inc. (the "Association").

Webb had been the president of the Association's five-member board of directors until he stepped down from the board effective October 1, 2005. Robins, having already served a partial term on the board during one of Webb's terms, was re-elected to the board at that time. According to Webb, there had been some conflict between Webb and Robins during their time together on the board and leading up to the October 2005 change of board membership.

In January 2006, Robins wrote a letter to Webb criticizing Webb's handling of an insurance claim against the homeowners' association during his prior tenure on the board, and included the letter in a package of materials Robins sent to the owners of all ninety-two condominiums at Allegro North. The insurance claim at issue involved water from an upstairs unit at Allegro North damaging a downstairs unit owned by Bill Southwell. Although the Association's insurance company, Century Insurance, had issued a check partially covering the damage, Webb believed the water damage to be excluded from the Association's insurance coverage and, therefore, the responsibility of the condominium owners involved in the incident. Having received a Century representative's confirmation of these coverage responsibilities, Webb returned the check—in person—to Century's local insurance agent, GSM Insurors. According to Webb, the Association did spend $2,500 to repair the Southwell unit's warped ceiling joists, which Webb believed was damage that had existed prior to the water incident.

In the package that he distributed to the ninety-two condominium owners, Robins also included copies of correspondence Webb had sent via facsimile to the board in December 2005 addressing the Southwell claim as well as another issue. These copies had been altered in a number of ways from their original form. According to Robins, the alterations had occurred prior to his

2

receipt of Webb's correspondence and had been caused by the Allegro North office manager's scanner, which was used to distribute the correspondence to the board members by electronic mail. Some of the words in the distributed copies, apparently as a result of the alterations, were misspelled or in some cases replaced by numbers. According to Webb, one of the condominium owners told Webb that after reading the facsimiles he wondered "what kind of idiot wrote them."

In response to the publication of Webb's facsimile communications to the Board and Robins's critical letter in response, Webb filed the lawsuit at issue in this appeal on June 29, 2006, alleging claims of "libel/slander/defamation" and intentional infliction of emotional distress, due to the "false, libelous, defamatory and slanderous verbal and written statements to third persons about Gayle Webb." According to Webb's petition, the following statements in the Robins letter were defamatory:

- "Upon receipt of that check you personally took the check to GSM Insurors, forced them to take it back, and threatened them and our insurance company with litigation because they had paid the claim."

- "Your actions jeopardized the Association's insurance coverage for repairs that were the Association's primary responsibility."

- "You either did not understand this responsibility [of the Association to repair damaged sheet rock regardless of the cause] or recklessly disregarded it."

- "By doing so, you created liability for the Association that did not previously exist."

- "After [the new board's first meeting in October 2005] we received a letter from Southwell threatening litigation due to your mishandling of the claim."

- "We then proceeded to work with the Association's insurance company and Southwell to repair the damage you had done to the relationship between all of them and the Association."

3

- "In summary, due to the actions of this Board, the Association (i) avoided a lawsuit and the attendant legal fees you would have incurred, (ii) recouped the $2,910 you spent to repair the joists, and (iii) restored the confidence of one of our neighbors, our insurance agent, and our insurance company that we can work together to resolve mutual problems."

On August 7, 2007, Robins filed both "traditional" and "no evidence" motions for summary judgment. Webb filed his response on August 13, 2007. On September 6, 2007, after considering "the pleadings, Motion, response, evidence on file, and arguments of counsel," the district court granted Robins's motions for summary judgment and dismissed all of Webb's claims. The district court did not specify the grounds relied on for its ruling on the motions. On appeal, Webb argues that the district court erred in granting Robins's motions for summary judgment as to Webb's libel and slander claims.[1] We review the summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004).

*Traditional Motion for Summary Judgment*

Under the "traditional" Rule 166a(c) standard, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Majeski v. Estate of Majeski*, 163 S.W.3d 102, 106 (Tex. App.—Austin 2005, no pet.). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and conclusively

---

[1] Webb has not challenged on appeal the district court's dismissal of his intentional infliction of emotional distress claim.

4

establish each element of an affirmative defense. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the defendant meets this burden, the burden shifts to the plaintiff to present evidence sufficient to raise a fact issue. *See id.* In reviewing a motion for summary judgment, we accept as true all evidence favoring the non-movant, making every reasonable inference and resolving all doubts in the non-movant's favor. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

Webb's response to Robins's traditional motion consisted only of a general denial. Therefore, our inquiry is confined to whether the summary judgment evidence demonstrates Robins is entitled to judgment as a matter of law based on the issues raised in the motion. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) ("While it would be prudent and helpful to the trial court for the non-movant always to file an answer or response, the non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient *as a matter of law* to support summary judgment."). In making this inquiry, we look at all the summary judgment evidence, whether propounded by the movant or the non-movant. *See Perry v. Houston Indep. Sch. Dist.*, 902 S.W.2d 544, 547-48 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.) ("A nonmovant may use a movant's own [summary judgment] exhibit against the movant to establish the existence of a fact question.").

To maintain a defamation claim, the plaintiff must prove that the defendant (1) published a statement, (2) that was defamatory concerning the plaintiff, (3) while acting with

5

actual malice (if the plaintiff was a public official or public figure) or negligence (if the plaintiff was a private individual) regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Libel and slander are forms of defamation. *See Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.). Libel is defamation in written form, and slander is defamation in oral form. *Id.*

Robins's Rule 166a(c) motion for summary judgment on Webb's libel claim was based on two grounds, each of which we consider. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989) ("When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious.").

First, Robins asserted that each of the statements in his letter that is set forth in Webb's petition is factually correct. *See Basic Capital Mgmt., Inc. v. Dow Jones & Co.*, 96 S.W.3d 475, 480-81 (Tex. App.—Austin 2002, no pet.) ("A statement that is true or substantially true cannot support a claim for either defamation or business disparagement."). Robins attached to his traditional motion for summary judgment his own affidavit stating that he believed the statements contained in his letter to be true based on his own and others' first-hand knowledge of events. However, he also attached to his motion Webb's deposition, which controverts Robins's statements in his affidavit. According to Webb's deposition, he neither "forced" GSM Insurors to accept the returned check nor "threatened" litigation. Webb further denied the accuracy of the Robins letter's statements that the insurance claim was the Association's "primary responsibility," that he "did not understand" or "recklessly disregarded" such insurance responsibility, that his actions "jeopardized"

6

the Association's insurance coverage and "created liability" for the Association, that he "mishandled" the claim, and that the board was therefore required to "repair the damage" between the Association and Century Insurance. Robins's deposition, which was also attached to his motion for summary judgment, lends some credence to Webb's assertions, because Robins admitted that ultimately the Association's insurer was not responsible for any portion of the insurance claim at issue. Making every reasonable inference and resolving all doubts in Webb's favor, we find that the evidence contained in the record is sufficient to raise material fact questions regarding the truth of the statements in the Robins letter.

The second ground on which Robins based his traditional motion for summary judgment on Webb's libel claim was the affirmative defense of qualified privilege. To be entitled to the qualified privilege, Robins's statements must have been made in good faith and communicated only to persons having a common interest or duty in the subject matter to which the communications relate. *See Grant v. Stop-N-Go Mkt. of Tex., Inc.*, 994 S.W.2d 867, 874 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The qualified privilege justifies the communication only when it is made without actual malice. *See id.* In the defamation context, a statement is made with actual malice when it is made with knowledge of its falsity or with reckless disregard as to its truth. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). Reckless disregard exists when "the defendant in fact entertained serious doubts as to the truth of his publication" or had a "high degree of awareness of [its] probable falsity." *See Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)).

7

When a defendant seeks summary judgment based on qualified privilege, it is the defendant's burden to conclusively establish that his allegedly defamatory statement was made with an absence of malice. *See Randall's Food Mkts.*, 891 S.W.2d at 646. Webb argues on appeal that the summary judgment evidence did not establish good faith and lack of actual malice as a matter of law. According to Robins's affidavit, at the time he sent the letter, he "did not have any doubts regarding the truth of any of the statements." However, Webb's deposition controverts Robins's statements in his affidavit. According to Webb, there was a history of personal animosity between Webb and Robins. This included the two of them getting "tangled up" over several incidents while they served together on the board, Robins's quitting the board soon after one of those incidents, and Robins's circulating letters prior to Webb's leaving the board to the effect that he did not like Webb's "style of operating the board." As to the altered copies of his facsimiles, Webb stated that Robins knew from experience that Webb did not write in such a mistaken manner and published them in order to damage his reputation: "Tom was mad at me. I had called him down on a number of things already and he didn't like it." Webb also asserted that Robins sent out the package without the board's full knowledge or approval. In addition, Robins admitted in his deposition and in the Robins letter itself that the Southwell claim had been covered by the individual condominium owners' insurance companies in the very manner that the Robins letter termed a "mishandling." Moreover, even though the Robins letter identified the Southwell claim as "the Association's primary responsibility," in his deposition Robins indicated that he had sought payment from the insurer of the upstairs unit before seeking any payment from the Association's insurer.

Given the evidence in the record of a history of personal animosity between the two parties, some evidence that Robins's distribution of his letter and the altered facsimiles was done

8

without the board's awareness or approval, and some evidence that the publication of the Robins letter took place after Webb's stated reasoning for the way he handled the Southwell claim was shown to be justified, we find the summary judgment evidence sufficient to raise a fact question on the issue of Robins's good faith and lack of actual malice. Thus, summary judgment based on Robins's affirmative defense of qualified privilege was not proper.[2]

*No Evidence Motion for Summary Judgment*

Under the Rule 166a(i)—or "no evidence"—standard, after adequate time for discovery a defendant may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim on which the plaintiff would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). A no evidence summary judgment is essentially a pre-trial directed verdict, and we apply the same legal sufficiency standard. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* The granting of a no evidence motion will be sustained when the evidence offered by the non-movant to prove a vital fact is no more than a mere scintilla. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists when the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their

---

[2] Because we find sufficient evidence to raise a fact issue regarding Robins's good faith and lack of actual malice, we do not address Webb's other argument raised on appeal against Robins's qualified privilege defense—that there was sufficient evidence to raise a fact issue on a "common interest" among Robins and the other Allegro North condominium owners.

conclusions. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion. *Moore*, 981 S.W.2d at 269.

The trial court must grant a no evidence motion for summary judgment "unless the respondent produces summary judgment evidence raising a genuine issue of material fact." Tex. R. Civ. P. 166a(i); *see Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614, 619 (Tex. App.—Eastland 2000, pet. denied) ("[I]n reviewing a no-evidence summary judgment, we will not consider summary judgment evidence propounded by the movant . . . ."). *Compare Wilson v. Burford*, 904 S.W.2d 628, 629 (Tex. 1995) ("Rule 166a(c) plainly includes in the record evidence attached either to the motion or to a response."), *with Arredondo v. Rodriguez*, 198 S.W.3d 236, 239 (Tex. App.—San Antonio 2006, no pet.) ("Because plaintiffs' response did not direct the trial court to any specific portion of their summary judgment evidence, plaintiffs failed to raise a fact issue sufficient to defeat appellee's no-evidence motion for summary judgment."). Therefore, in determining whether Webb has raised more than a scintilla of evidence regarding the grounds on which Robins based his Rule 166a(i) motion for summary judgment, we are limited to the summary judgment proof produced in Webb's response—the Robins letter, the altered Webb facsimiles, and Robins's deposition.[3] Webb also

---

[3] Robins argues that, with regard to the no evidence motion for summary judgment, his deposition cannot be considered on appeal as evidence of the falsity of any statements by him because Webb's summary judgment response did not state that the deposition was attached *for that purpose*. In support of his argument, Robins cites cases stating that general references to a voluminous record are insufficient as summary judgment proof. *See, e.g.*, *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989). We do not consider the eighteen pages of deposition testimony included with the response to be so voluminous as to hinder a proper review of whether they raise a fact issue.

refers to his petition in his response. However, pleadings do not constitute summary judgment evidence. *See Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971).

In his no evidence motion, Robins asserts that Webb produced no evidence that "Defendant published in written communication any false statement of fact referring to Plaintiff." However, the Robins letter itself is evidence of a "written communication . . . referring to Plaintiff." Robins's deposition includes his statement that the letter was sent to all the condominium owners of the Association, which is evidence that the Robins letter was "published." As to the Robins letter's statements that Webb alleges to be false, and thus allegedly libelous and defamatory, Robins in his deposition defended his statements as "factual." Yet, he also admits in his deposition that the Association's insurance was not ultimately responsible for the Southwell claim. Although Robins indicated in his deposition that he did not know "for sure" that the upstairs unit owners were responsible for the claim, Robins stated in his letter that the upstairs unit owner's insurance company did assume full responsibility. In addition, while Robins in his deposition stated that the Association is responsible for paying claims and then seeking recovery from a negligent person, one of the altered Webb facsimiles states the opposite, that revisiting the Southwell issue is not "right for the Association according to [by-laws] and the declaration." This evidence contradicting statements in the Robins letter is sufficient to raise a fact issue regarding the falsity of those statements. Therefore, we conclude that there is more than a scintilla of evidence that Robins published false statements of fact in a written communication.

In his no evidence motion, Robins also asserts that Webb has no evidence that "Defendant orally published any false statement of fact referring to Plaintiff." The summary

judgment proof produced in Webb's response—the Robins letter, the altered Webb facsimiles, and Robins's deposition—contains no reference to any oral statement by Robins referring to Webb. Therefore, Webb failed to produce summary judgment evidence raising a genuine issue of material fact with regard to his claim of slander.

### *Conclusion*

We reverse the portion of the district court's judgment dismissing Webb's libel claim, and remand that claim to the district court for further proceedings. We affirm the portion of the district court's judgment dismissing all other claims, including Webb's slander and intentional infliction of emotional distress claims.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Remanded in part

Filed: July 17, 2008